IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ANGELIKA R. FISHER** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:07-CV-BE-01454-NW |
| | ) |
| **MICHAEL J. ASTRUE, Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Angelika R. Fisher, filed applications for Disability Insurance benefits and Supplemental Security Income payments on June 3, 2004, alleging disability commencing on October 29, 2002 due to a surgically reconstructed hip, a previously fractured leg and ankle, and depression. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on January 31, 2006. In a decision dated March 2, 2006, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income Payments. On June 7, 2007, the Appeals Council denied the claimant's request for review. The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be **REVERSED** and **REMANDED**.

## II. Issues

In this appeal, the claimant argues that the Commissioner erred in three ways. First, the claimant alleges that the *ALJ* erred in failing to consider the claimant's mental health in his evaluation of her disability claim. Second, the claimant argues that the *Appeals Council* erred by "failing to properly consider significant evidence of disabling depression and PTSD [Post Traumatic Stress Disorder]," and, therefore, the decision is not based on substantial evidence. Finally, the claimant asserts that the ALJ erred by failing to include vocational expert testimony when deciding the level of physical exertion claimant could manage and in determining her residual functional capacity.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. Under this limited standard of review, this court will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations de novo, but the Commissioner's factual findings must be supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* In other

words, substantial evidence is "more than a mere scintilla." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. Furthermore, a reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above question leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F. 2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.9201 (2008).

**V. Facts**

The claimant was forty-nine years old at the time of the administrative hearing and has a high-school equivalent education. (R. 202-203). Her past work experience includes employment as a receiving supervisor and a truck driver. (R. 15, 203). According to the claimant, she became disabled on October 29, 2002 at the age forty-six as the result of a motor vehicle accident. (R. 205). The claimant has not engaged in substantial gainful activity since the alleged onset date. (R. 70-74, 137)

The claimant testified that she fractured her right hip, right fibula, right tibia, and right ankle as a result of the accident and suffers from debilitating pain and physical limitations as a result of these injuries. (R. 141, 205). Claimant also testified that she suffers from depression resulting from the residual pain, her inability to work, and her general life situation. (R. 208, 213). Immediately after the wreck, the claimant was taken to Marion Regional Medical Center in Hamilton, Alabama; however, she was transported to North Mississippi Medical Center in Tupelo, Mississippi and placed in the care of Dr. Kenneth A. Grinspun, an orthopaedic surgeon. (R. 143, 145-148). Dr. Grinspun performed several surgeries over the weeks following claimant's admission to the hospital and repaired her leg, hip, and ankle. (R. 139-144). According to documentation, claimant was dismissed from the hospital on November 24, 2002 and instructed to be "nonweight bearing." (R. 161).

Dr. Grinspun continued to examine the claimant periodically over the next several months. (R. 167-168). He examined her on December 4, 2002 and noted improvement in her range of motion and the importance of her continued utilization of the prescribed physical therapy which she had been reluctant to perform. (R. 168). Dr. Grinspun conducted another

examination on January 3, 2003 and recorded that claimant complained of swelling and stiffness; he noted the importance of aggressive physical therapy but also stated that claimant was "doing pretty well" considering the extent of her injuries. (R. 168). After examination on February 19, 2003, the doctor noted marked improvement in the degree of swelling and the ability to flex the injured leg and ankle. (R. 167). He also remarked that she continued to experience some pain due to hyperesthesias[1] and that she desired to conduct her own physical therapy. (R. 167). Dr. Grinspun examined claimant again on April 16, 2003 and stated that significant swelling was still present. (R. 167). Claimant also complained of the difficulty of standing all day and inquired about the possibility of a disability rating. (R. 167). He mentioned the continued likelihood of improvement and an upcoming functional capacity exam. (R. 167). The claimant's last appointment with Dr. Grinspun, on August 15, 2003, was defined by significant improvement, minimal complaints, and decreased swelling. (R. 167). Claimant failed to attend scheduled appointments with Dr. Grinspun on July 16, 2003 and on January 14, 2004. (R. 167).

On September 8, 2004, Dr. M. Clarke Woodfin, Jr., a general practitioner, performed a consultative exam on claimant. (R. 14, 170). He noted that she walked without using the cane she carried, arose from sitting and sat down in a "normal fashion at a normal speed," and had driven a distance of ten to twelve miles to the appointment. (R. 170-171). He noted that she appeared to have received "excellent care" and did not attest to limited ability to walk or stand, although she did complain of difficulty lifting, carrying, and sitting. (R. 171).

A state agency consultant administered a residual physical functional capacity assessment on September 30, 2004 by examining the evidence in the record. (R. 172-181). The state agency

---

[1] increased or unusual sensitivity of the skin or of a particular sense

5

consultant concluded claimant possessed the following abilities: to carry and lift a maximum of 50 pounds occasionally, to stand and walk for a total of 6 hours in an 8-hour workday, to sit for a total of 6 hours in an 8-hour workday, and to occasionally push using her lower extremities. (R. 173-4). Additionally, the consultant concluded claimant could occasionally climb a ramp or stairs, although she could not use a ladder, rope, or scaffold. (R. 176). Claimant possessed no visual, communicative, or manipulative (reaching and grabbing) limitations. ( R. 176-7). Finally, the consultant noted claimant should avoid all exposure to extreme hot and cold, wetness, and hazardous environments, such as heights. (R. 177-8).

In addition to treatment for her physical conditions, claimant received treatment for mental conditions beginning in February 2005. (R. 22). Jane Ann Gilbert, LPC, at Northwest Alabama Mental Health Center, examined her. (R. 22). Following this examination, a licensed therapist or psychologist diagnosed claimant as suffering from major, recurring depression and "chronic and severe" Post Traumatic Stress Disorder (PTSD) with flashbacks. (R. 22-36). The health center records reflect that claimant suffered from panic attacks, difficulty sleeping, feelings of isolation, and that she had grief issues relating to the tragic drowning death of her thirteen-year-old daughter and to the loss of another daughter that she gave up for adoption. (R. 22-36). The records also reflect that she was abused as a child. (R. 22-36). The therapist assigned claimant to a treatment regimen that consisted of several prescription medications, group therapy, and individual consultations. (R. 22, 25-33). The record demonstrates that claimant attended the group therapy sessions consistently for a period of about two-and-a-half months ranging from late February 2005 until early May 2005. (R. 25-32). At that point, the record reveals that claimant ceased attending the group therapy sessions and did not follow her

6

treatment regimen. (R. 22-33). The health center terminated claimant's treatment and case on August 23, 2005 because of her failure to comply with the recommended treatment. (R. 23).

At the hearing, in January 2006, claimant provided medical records for her physical treatment but did not provide records of the Northwest Alabama Mental Health Center. (R. 14). However, at the social security hearing, she testified about her mental health treatment and her overall state of mind. (R. 14, 208, 211-214). Claimant testified that she was unable to find adequate transportation to and from the therapy sessions. (R. 208). In addition, claimant testified that she never took any of the medication prescribed to her for treatment of her depression due to her inability to afford them. (R. 213). The ALJ noted in his decision that the record contains no evidence that claimant sought the assistance of clinics or state programs that provide medications to those unable to afford them. (R. 15). He indicated that her continuation of her long history with tobacco conflicted with her claim that she could not afford the medications for her mental condition. (R. 15).

Claimant submitted records of the health center pertaining to her treatment and mental health on March 3, 2006, which was more than thirty days after the hearing before the ALJ and one day after the ALJ had ruled. (R. 21). At the hearing, the ALJ notified claimant that the record would be left open for twenty-eight days after the hearing so that medical evidence pertaining to claimant's mental health and corresponding treatment could be considered. (R. 14). Thus, claimant's submission of the evidence regarding her mental health treatment was not within the time limit the ALJ established for post-hearing submissions.

The ALJ found that the claimant had not engaged in substantial gainful activity since October 29, 2002. (R. 14). The ALJ concluded that as a result of her motor vehicle accident,

claimant had, at all times relevant to the decision, the following severe impairments: status post open reduction internal fixation of the right fibula, right pilon, and right hip.  (R. 14).  The ALJ noted but disregarded claimant's allegations of disability due to depression because of claimant's failure to submit supporting evidence of depression.  (R. 14).  The ALJ found that neither of these severe impairments nor a combination of them met or medically equaled an impairment set forth in the Listing of Impairments.  *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. ss. 404.1520(d) & 416.920(d).  (R. 15).  However, the ALJ concluded that from the time of the accident, October 29, 2002, until the examination of the consulting physician, September 8, 2004, "the claimant lacked the residual functional capacity to perform even sedentary work on a regular and continuing basis" as a result of her injuries and resulting surgeries.  (R. 15).  After September of 2004, he found that she improved as reflected in her failure to seek treatment and Dr. Woodfin's exam notes.  (R. 15).  The ALJ found that the claimant was unable to perform past relevant work as a receiving supervisor and a truck driver from October 29, 2002, until September 8, 2004.  (R. 15).  The ALJ stated: "From October 29, 2002 through September 8, 2004, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed."  (R. 16).  The ALJ utilized the Medical-Vocational Guidelines (grid) to weigh the variables in question and reach this conclusion.  (R. 16).  Thus, the claimant was under a disability from October 29, 2002 through September 8, 2004.  (R. 16).

The disability ended, according to the ALJ, with the improvement noted on September 8, 2004 by Dr. Woodfin.  (R. 16).  Specifically, Dr. Woodfin noted claimant did not complain of any limited ability.  (R. 16).  Since September 8, 2004, "the claimant has not had an impairment

or combination of impairments that meets or medically equals one of the impairments" in the Listing of Impairments. *see* C.F.R. Pt. 404, Subpt. P, App. 1. (R. 16). The ALJ concluded that after September 8, 2004, the claimant had the residual functional capacity to perform work at a medium exertional level. (R. 17). In assessing the RFC, the ALJ stated that the record as a whole failed to document a sufficient objective basis for accepting the claimant's allegations concerning the intensity, duration, and limiting effects of the various symptoms she complained of. (R. 17). The medical record from Dr. Grinspun noted significant improvement in claimant's overall state in late 2003, and Dr. Woodfin documented claimant's increased flexibility in late 2004. (R. 17, 167, 170-71). Additionally, the ALJ considered the opinion of a State Agency medical consultant regarding the claimant's physical limitations. (R. 17). The ALJ noted he was not bound by the expert opinion of this consultant. (R. 17). However, the consultant's opinion was to be accorded weight insofar as "it [was] supported by the evidence in the case record." (R. 17). In this case, the ALJ concluded the consultant's opinion was consistent with the record as a whole and therefore adopted it "as indicative of the claimant's residual functional capacity." (R. 17). The ALJ's conclusion, based on the state agency consultant's findings, was that, after September 8, 2004, the claimant had the "residual functional capacity to perform a full range of medium work." (R. 17, 172-181). The ALJ utilized the evidence of the record, including but not limited to the notes of the treating physician, the consultative exam results, and the expert opinion of the state agency consultant to reach this conclusion; a Vocational Expert was not requested and did not testify. (R. 17). The ALJ held that beginning on September 8, 2004 the claimant became capable of performing her past relevant work as a receiving supervisor and a truck driver and that these occupations were within the scope of her current residual functional

9

capacity. (R. 18).

After the ALJ's decision, claimant appealed to the Appeals Council and submitted for the first time records from the Northwest Alabama Mental Health Center. (R. 7, 21). As discussed above, these records contained evidence of claimant's diagnosis of PTSD and depression. (R. 23). Her treatment for these illnesses began in February 2005 and ended in August of the same year, and it consisted of prescribed medication, group therapy, and individual counseling. (R. 22-36). These treatment measures ended as a result of claimant's "non-compliance with treatment recommendations." (R. 23). The Appeals Council considered the new evidence that claimant submitted regarding her mental health and corresponding treatment. (R. 3). However, the Appeals Council denied review on June 7, 2007 noting only that the new "information does not provide a basis for changing the ALJ's decision." (R. 3-4) Claimant filed a timely appeal.

## VI. Discussion

### A. Failure to Develop the Record

Fisher first argues that the ALJ failed to fully develop the record as to her mental health. The ALJ has a duty to develop a full and fair administrative record. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Despite this duty to fully develop the record, the claimant does bear some responsibility: "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Section 404.1512(c) of 20 C.F.R. states that it is the responsibility of the claimant to "provide medical evidence showing that" he or she has "an impairment(s) and how severe it is during the time" the claimant alleges he or she is disabled.

At the hearing, Fisher claimed she suffered from depression but admitted that, because of financial limitations, she did not take medication that was prescribed for her treatment and had discontinued her visits to the Northwest Alabama Mental Health Center.  The claimant failed to submit any medical records or other evidence of mental health treatment during the twenty-eight days following the hearing despite the ALJ's advising her that he would leave the record for that period of time.  The ALJ does not bear the responsibility or burden of gathering evidence for the claimant to present.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912 (a) & (c).

Accordingly, the court finds that the ALJ's actions do not constitute a breach of his duty to develop a full and fair administrative record.

**B.  New Evidence**

Fisher's second argument is that the Appeals Council erred by failing to consider evidence of her mental health treatment.  Subject to limitations mentioned *infra*, a claimant may submit new and material evidence at any time during the review process.  20 C.F.R. § 404.900(b).  The Appeals Council will consider new evidence "only where it relates to the period on or before the date of the ALJ hearing decision."  20 C.F.R. 404.970(b).  The record reveals that the treatment records from the Mental Health Center, which constituted the new evidence, met this requirement and that the Appeals Council considered this evidence.  (R. 3).  The Appeals Council stated in its notice of action: "we considered . . . the additional evidence listed on the enclosed Order of Appeals Council."  (R. 3). This "additional evidence" referred to treatment records from the Northwest Alabama Mental Health Center.  (R. 6).  After this consideration, the Appeals Council found no basis for changing the ALJ's decision and,

11

therefore, denied review.  The Appeals Council held that the "information does not provide a basis for changing the ALJ's decision." (R. 4).  The Appeals Council must review the case if "the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).  Claimant's assertion that the Appeals Council "simply offered a form denial by an appeals officer without any mention of this pertinent evidence" contradicts the record.

Claimant's reliance on the case of *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064 (11th Cir. 1994), is misguided.  In *Keeton*, the Appeals Council denied review after refusing to consider new evidence.  The facts of *Keeton* are not analogous to the record of this case, in which the Appeals Council did consider the new evidence claimant presented and then denied review.  This case is more analogous to the facts of *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007) in which the plaintiff challenged the decision of the Appeals Council to accept the new evidence presented and yet deny review.   In the instant case, Fisher argues only that the Appeals Council erred by failing to consider evidence of her mental health treatment.  Because the Appeals Council did consider the mental health records, her argument fails.

The court will also deem Plaintiff's appeal to include a claim that, given the Appeals Council's consideration of the new evidence,  the new evidence renders erroneous the final decision of the Commissioner denying benefits.  Until *Ingram*, the binding case law involving the inclusion of new evidence generated confusion.  The Eleventh Circuit resolved this confusion in *Ingram* by clearly enumerating and discussing Sentence Four and Sentence Six remands.  496 F.3d 1253 (11th Cir. 2007).  The former applies to "a denial of review by the Appeals Council"

when new evidence has been considered. *Ingram*, 496 F.3d at 1262. Such a denial is part of the "final decision" of the Commissioner. *Id*. at 1265. The Eleventh Circuit stated: "When a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id*. When the Appeals Council considers new evidence but denies review, the district court's duty is to determine whether the Appeals Council "correctly decided that the 'ALJ's action, findings, or conclusion is [not] contrary to the weight of the evidence *currently of record*.'" *Id*. at 1266-1267, (*quoting* 20 C.F.R. § 404.970(b)) (emphasis added). Under sentence four of § 405(g), the district court may affirm, modify, or reverse the Commissioner's decision and may remand the case for a rehearing. 42 U.S.C. § 405(g).

The new evidence submitted to the Appeals Council consisted of the records from the Northwest Alabama Mental Health Center that documented claimant's mental health status and the various treatment regimens she was assigned from February to May 2005. The Appeals Council considered this new evidence but denied review because it found that the ALJ's decision and the denial of benefits was not in error even with the addition of this new evidence. (R. 3-4). The district court's duty is to determine if the Appeals Council correctly decided that the ALJ's decision was not "contrary to the weight of the evidence currently on record." *Id.* at 1266-1267. After reviewing the record as a whole, including the mental health records presented to the Appeals Council, this court cannot say with confidence – given the new evidence of claimant's depression and PTSD – that substantial evidence supports the final decision of the Commissioner.

The Listing of Impairments describes impairments that are considered severe enough to

prevent a person from performing any gainful activity.  *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Section 12.04 of the Listing state that Affective Disorders, "[c]haracterized by a disturbance of mood, accompanied by full or partial manic or depressive syndrome," are severe impairments.  *Id*.  The evidence of record strongly suggests that claimant may qualify or may have qualified as disabled under this listing.  Claimant's records from the mental health clinic reflect that both a licensed professional counselor and a medical doctor diagnosed claimant with "major" recurring depression and PTSD.  (R. 22-36).  As required under § 12.04(A), the records document that she suffered from depressive syndrome characterized by sleep disturbance, decreased energy, feelings of guilt and isolation, change in weight, panic attacks, etc.  (R. 22-36); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A).   The records note claimant's "chronic and severe" PTSD accompanied by flashbacks, and note as well her history of child abuse and grief issues relating to the tragic drowning death of her thirteen-year-old daughter and the loss of another daughter whom claimant gave up for adoption.  (R. 22-36).  Further, as required under § 12.04 (B), the new evidence arguably supported a claim that claimant's depression caused marked restrictions in activities of daily life and marked difficulties in maintaining social functioning. (R. 22-36); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B).  They document her isolation and the severity of her problem, and support her hearing testimony regarding decreased interest in activities, sleep disturbance, decreased energy, change in weight, crying spells, and lack of social interaction. (R. 22-36, 211-213, 225-227).

       The mental health clinic records also reflect that claimant discontinued her group therapy and ignored the prescribed regimen of medications.  Refusal to follow prescribed medical treatment without good reason will preclude a finding of disability.  20 C.F.R. § 404.1530(b), [20

C.F.R. § 416.930(b)]; *see also Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). However, she arguably offers a good reason for failing to follow the prescribed medical treatment: she testified that she could not afford the medication and that she was unable to secure transportation to the group therapy sessions. (R. 14, 213). Poverty excuses failure to follow prescribed medical treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Dawkins v. Bowen*, 848 F.2d 1211, 1213-1214 (11th Cir. 1988). Although the ALJ noted that no evidence of record reflects that she sought the assistance of clinics or state programs providing medications to those unable to afford them, no evidence reflects that she was aware of those programs. Claimant's testimony at the hearing regarding being behind on her apartment rent and having her electricity cut off at the apartment supports her claim of poverty. (R. 210). Further, the records from the mental health clinic reflect her severe financial problems. (R. 22-36). The ALJ also noted that her continuation of her smoking habit belies her ability to afford medication, but no testimony at the hearing focused on her smoking, and the record is unclear about the frequency of her use of tobacco or how much, if any, she spends on tobacco products.

At the very least, claimant's mental health records reflect non-exertional limitations of depression and PTSD that should be part of the disability analysis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 (A) & (B); *see also Ingram*, 496 F.3d 1253 (11th Cir. 2007). However, mental health records supporting claimant's oral testimony were not submitted prior to the ALJ's decision. Thus, he did not consider such limitations and entered rulings on claimant's residual functional capacity based on the notes of the treating and consultative physicians and the expert opinion of the state agency consultant, none of which considered claimant's depression and PTSD. As stated earlier, given the new evidence of claimant's non-exertional limitations

submitted to the Appeals Council and these limitations' potential classification as severe impairments, the decision to deny review was in error.

**C.     Vocational Expert Testimony**

Claimant's last challenge asserts that the ALJ erred by failing to include required vocational expert testimony when deciding the level of physical exertion claimant was capable of and in determining her residual functional capacity.  The responsibility of assessing the residual functional capacity (RFC) of a claimant is expressly delegated to the ALJ under 20 C.F.R. § 404.1546(c).  The pertinent part of this section states: "If your case is at the ALJ hearing level . . . or at the Appeals Council review level . . ., the ALJ or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."  20 C.F.R. § 404.1546(c).

The ALJ found that claimant possessed a residual functional capacity to  perform a full range of medium work.  (R. 17).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  The ALJ based his conclusion that claimant could perform medium level work on the evidence contained in the record, explicitly referencing the expert opinion of  a state agency consultant who reviewed the entirety of the record.  (R. 17, 172-81).

The state agency consultant's assessment, as assessment that the ALJ adopted,  found claimant can perform the typical requirements for medium-level work regarding lifting, carrying, standing and sitting, but the consultant acknowledged several limitations that arguably conflict with the ALJ's decision that claimant could perform her past relevant work of receiving supervisor and truck driver.  (R. 172-81).  She is limited in her right leg to occasional pushing.

(R. 174). She can only occasionally climb stairs or ramps and may never ascend ladders, ropes, or scaffolds. (R. 176). Additionally, she should avoid prolonged exposure to extreme hot and cold and to wetness. (R. 177). Finally, she should avoid all exposure to heights. (R. 178). In spite of these exertional and non-exertional limitations, the ALJ concluded at stage four of his analysis, without consulting a vocational expert, that claimant could perform a full range of medium work, including her past relevant work. (R. 17-8).

In light of the assessment that the ALJ adopted, this court finds the ALJ's conclusion troubling. Common sense dictates that claimant's past relevant jobs of driving a truck and driving a fork lift (as part of her job of receiving supervisor) would require more than occasional pushing with her right foot and climbing stairs or ramps. Presumably, they would also require, at times and depending upon the weather, prolonged exposure to cold, heat, and wetness. Accordingly, the court finds that, in light of the ALJ's adoption of the assessment of the state agency consultant and the limitations therein, substantial evidence does not support the ALJ's conclusion that the claimant could perform her past relevant work.

In light of that finding, the court need not proceed to determine whether the failure to consult a vocational expert to assist in the analysis was error. The court notes that at step four of the sequential evaluation process, the ALJ's decision regarding whether to use a vocational expert is a discretionary one. *See* 20 C.F.R. § 404.1560(b)(2). The court further notes, however, that if the ALJ had properly moved to step five, the existence of varied non-exertional limitations regarding prolonged exposure to heat, cold, wetness, and any exposure at all to heights would militate in favor of consulting a vocational expert. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) (testimony of a vocational expert is required when limitations include non-

exertional limitations). The court also notes that the new evidence presented to the Appeals Council potentially added further non-exertional limitations, and may further undermine the Commissioner's decision.

## VII. Conclusion

For the above reasons, the court finds that substantial evidence does not support the decision of the Commissioner. Therefore, the court will **REVERSE** and **REMAND** the decision of the Commissioner to determine whether the claimant is entitled to Disability Insurance Benefits or Supplemental Security Income Payments.

The court will enter a separate Order in accordance with this opinion.

DONE and ORDERED this 19th day of December, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE